```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

NICHOLAS COLLINS                                          PLAINTIFF

VS.                            CIVIL ACTION NO. 3:11CV572TSL-MTP

DETECTIVE ALTRICH HARVEY,
INDIVIDUALLY                                              DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Altrich Harvey for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Nicholas Collins has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

Plaintiff filed this 42 U.S.C. § 1983 action against Altrich Harvey, a police detective with the City of Jackson, Mississippi, in his individual capacity, alleging violations of his Fourth Amendment rights arising from an June 10, 2010 incident in which he was arrested and his property searched. It appears from the record evidence that the following pertinent facts relating to the incident are not in dispute.

On June 10, 2010, Jackson Police Department Detective Aldridge Harvey was made aware of an e-mail from an Amber McGee, who reported that her father-in-law David McGee had been living in

a shack he had built on an abandoned lot next to 630 Red Oak Street in Jackson; that David McGee was gone from the property and had no plans to return; and that David McGee had told her that there were numerous guns (among which were assault rifles) inside the shack that could present a hazard to persons in the vicinity, including children.  Detective Harvey and other members of the narcotics unit went to the Red Oak location to obtain the firearms.  The officers were unable to find a 620 Red Oak but noticed a homemade structure on Red Oak next to an abandoned lot. The officers observed plaintiff Nicholas Collins cleaning the lot. They explained to Collins why they were there and asked to search the property.  Collins, who owned the lot, confirmed that David McGee lived at the location, but he refused to allow them to enter and search the property, and told them he would not allow them to search unless they had a warrant.  Harvey states in his affidavit, which plaintiff does not contradict, that Harvey was irate and combative toward the officers.  The officers ran a local check and found there was an outstanding contempt warrant for Collins. Harvey states – and plaintiff does not deny -- that upon being informed of the warrant, Collins' hostility increased, and officers from another precinct were called in to assist.  While the officers remained on the scene, the detectives obtained a search warrant.

In his affidavit, Harvey states each time officers and detectives approached Collins for the purpose of arresting him, he would take an aggressive stance as if preparing to fight.  For this reason, units from Precinct Five were called to the scene to assist, since that unit was equipped with a Taser.  Harvey relates that when the Precinct Five unit arrived, Officer Tracy Haymon attempted to talk to Collins, but every time he did, Collins would assume a defensive stance.  Officer Haymon gave Collins several verbal commands to place his hands behind his back and to get on the ground, but Collins refused to comply.  Collins then started backing towards a two by four that was lying by a nearby fence.  After Collins refused several more commands, Officer Haymon deployed the taser on him, following which he was taken into custody.

For his part, plaintiff states in his own affidavit that he had his hands up and out when one of the officers fired a stun gun at him.  However, he does not deny there was an outstanding warrant for his arrest, and he does not deny that he was uncooperative, hostile and combative towards the officers or that he refused Officer Haymon's commands to place his hands behind his back and get on the ground.

Plaintiff alleges that Detective Harvey violated his Fourth Amendment rights when he arrested plaintiff and searched the

3

premises and purports to assert a claim against Harvey for excessive force based on supervisory liability.

Harvey, who is sued in his individual capacity only, has moved for summary judgment on the basis of qualified immunity, contending that there was no violation of plaintiff's constitutional rights since he was arrested pursuant to a valid arrest warrant and since plaintiff's property was searched pursuant to a valid search warrant.  He submits that even if there was some type of violation, his actions were objectively reasonable under the circumstances he faced at that time.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lytle v. Bexar County, Tex., 560 F.3d 404, 409 (5th Cir. 2009) (internal quotation marks and citation omitted).  The qualified immunity defense has two prongs:  whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009).  A court may rely on either prong of the defense in its analysis. Id.

Plaintiff alleges he was arrested without probable cause, in violation of his rights under the Fourth Amendment.  The Fourth Amendment right to be free from arrest without probable cause has

4

long been clearly established. <u>Carthon v. Prator</u>, 408 Fed. Appx. 779, 782, 2010 WL 4351204, 2 (5th Cir. 2010) (citing <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 206 (5th Cir. 2009)). However, as it is undisputed that plaintiff was arrested pursuant to a valid arrest warrant, there was no Fourth Amendment violation based on the arrest, and Harvey is entitled to qualified immunity.

"A police officer cannot be held liable in an individual's subsequent § 1983 suit for false arrest if that officer arrested that individual either with probable cause or pursuant to a valid arrest warrant." <u>Anderson v. Oster</u>, Civil Action No. 10-0293, 2011 WL 2532411, 9 (E.D. La. June 24, 2011) (citing <u>Mundy v. Ga.</u>, 586 F.2d 507, 508 (5th Cir. 1978), and <u>Smith v. Gonzales</u>, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest.")). Even where there may be some basis for challenging the validity of the warrant, "a police officer who makes an arrest on the basis of a facially valid arrest warrant will in most cases be entitled to qualified immunity...." <u>Vance v. Nunnery</u>, 137 F.3d 270, 276 n.3 (5th Cir. 1998) (citing <u>Hamill v. Wright</u>, 870 F.2d 1032 (5th Cir. 1989)). An exception arises where the officer participated in securing the warrant and he knows or has reason to know that the magistrate who issued the warrant was materially misled on the basis for a finding of probable cause. <u>See</u> <u>Mendenhall v. Riser</u>, 213 F.3d 226, 232 (5th Cir. 2000) (stating

that "a valid arrest warrant [will] normally insulate officers against a claim of false arrest," unless "the officers charged with the false arrest [are] responsible for securing the warrant"); Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994) (stating that when an arresting "officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, ... the shield of immunity [afforded by a warrant] is lost"). But an officer who did not participate in obtaining an allegedly defective warrant but who merely participated in an arrest pursuant to the warrant which was valid on its face will have no liability, as he is entitled to assume that the warrant was obtained validly. Bennett v. City of Grand Prairie, Texas, 883 F.2d 400, 408 (5th Cir. 1989). See also Michalik v. Hermann, 422 F.3d 252, 261 (5th Cir. 2005) (holding that an officer who merely participates in an arrest and search and seizure, but was not an affiant and did not participate in preparing or obtaining a warrant, has no liability as he may rely, in good faith, on the acts of another officer in procuring a warrant); Hart v. O'Brien, 127 F.3d 424, 445 (5th Cir. 1997) ("[A]n officer who has no personal knowledge of facts asserted in an affidavit [may] rely on information provided by another officer to file a warrant application.") (citing Kalina v. Fletcher, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997)), abrogation on

other grounds recognized by Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999).

In the present case, plaintiff alleges that he was arrested pursuant to a nine-year old "no tag" warrant; but he has not suggested any basis on which the warrant might be found invalid. Accordingly, there was no violation of his constitutional right to be free from false arrest. See Smith, supra, 670 F.2d at 526. Even if plaintiff did challenge the validity of the warrant, the record evidence establishes without dispute neither Harvey nor any of the other officers present at the time of plaintiff's arrest secured the warrant; they merely discovered while on the scene that there was an outstanding warrant for plaintiff's arrest, which they executed by arresting plaintiff. Under the circumstances, Harvey is entitled to qualified immunity as to plaintiff's claim for wrongful arrest.

In his complaint, plaintiff alleges that officers used excessive force in effecting his arrest and thereby violated his Fourth Amendment right to be free from unreasonable seizure, see Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam) (explaining that an arrestee had a clearly established right to be free from excessive force); and he alleges that Harvey, as a supervisor responsible for training, supervision and/or discipline, is liable for his subordinate's use of

excessive force.[1] In his motion, Harvey correctly contends that he is entitled to summary judgment on any claim for excessive force premised on a theory of vicarious liability since under § 1983, supervisory officials are not liable for the actions of subordinates on a theory of vicarious liability, see Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). He further contends he cannot be liable on a failure to train theory since there is no evidence that he had any responsibility for the training, supervision or discipline of the officers. See Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005) (holding that the city police chief was entitled to qualified immunity because the plaintiff did not show a failure to train or supervise the officer). Plaintiff does not contend otherwise in his response, and in fact, has not addressed and thus has not opposed Harvey's motion with respect to the putative excessive force claim. Accordingly, summary judgment will be granted on this claim.

Similarly, plaintiff has not responded to Harvey's motion as it relates to the putative claim asserted in the complaint against

---

[1] Plaintiff does not allege that Harvey used excessive force, but rather than he is legally responsible for others' use of excessive force. Specifically, he states:
> Defendant Harvey and or some other unnamed defendants John and James Doe was at all relevant times a supervisor in the JPD, with oversight responsibility for the training, instructions, supervision and discipline of other defendant police officers who deprived Collins of his federal and state constitutional rights.

Harvey for failing to intervene to prevent the use of excessive force against plaintiff. In order to prove a civil rights violation under 42 U.S.C. § 1983 for such a failure to intervene, plaintiff must demonstrate that the defendant did not take reasonable measures to protect him from another officer's use of excessive force. See Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). Harvey submits, and plaintiff has offered no contrary proof, that Harvey witnessed excessive force and failed to intervene to stop it. See Nowell v. Acadian Ambulance Serv., 147 F. Supp. 2d 495, 507 (W.D. La. 2001) (no bystander liability unless defendant observed the use of excessive force or had an opportunity to take steps to prevent the alleged use of force, or to intervene to stop it). For these reasons, Plaintiff's claim for bystander liability will be dismissed.

Plaintiff's claim with respect to the search of his property is apparently that although Harvey and the other officers purported to search his property pursuant to a search warrant, the search violated his rights under the Fourth Amendment since the warrant procured by Harvey was not for plaintiff's property, which was located at 170 Red Oak Street, but was instead issued for 160 Red Oak Street, which plaintiff states, based on information and belief, is owned and/or occupied by one Flora McGee.

Harvey argues that the fact that the address in the warrant was incorrect does not strip him of qualified immunity, and the

9

court agrees. As Harvey notes, the Supreme Court has held that police officers do not necessarily violate the Fourth Amendment when they mistakenly execute a search warrant on the wrong address. See <u>Maryland v. Garrison</u>, 480 U.S. 79, 88, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987). Law enforcement officers are generally granted qualified immunity if the evidence is undisputed that they merely made an honest mistake when entering the incorrect home. See <u>Simmons v. City of Paris</u>, 378 F.3d 476, 479-80 (5th Cir. 2004). Here, the property which the officers searched was the intended target of the search warrant, i.e., guns located in the structure occupied by David McGee. The magistrate who issued the warrant found that probable cause existed for issuance of a warrant to search for guns located in the shack formerly occupied by McGee on property owned by plaintiff. The warrant merely contained a single-digit error in setting out the address of the property that was to be searched. Harvey's actions in proceeding with a search of the property for which the warrant was sought, and for which he believed a warrant had been issued, was objectively reasonable. See <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999) (holding that whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury). He is consequently entitled to qualified immunity as to this claim, as well.

Based on the foregoing, it is ordered that Harvey's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 25th day of January, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE